Case number 21-5258, Bradley v. Waterman, Avalance v. Internal Revenue Service. Mr. Vlodek for the Avalance, Ms. Aveda for the Appellee. Good morning, Your Honors, and may it please the Court. The question before the Court today is whether the deliberative process privilege shields memos laying out the factual basis for allegations of misconduct against Mr. Waterman, and the case is unusual because the IRS seems to be at odds with itself. The IRS argues that disclosure of the factual basis of the allegations could shield reporting of misconduct, even though none of the IRS's declarations mention any specific harm to the deliberative process privilege, let alone the chilling effect argument made in the IRS's brief. This absence may reflect the fact that the Office of Responsibility, OPR, as I'm going to refer to it, disagrees. Its practice is to provide practitioners a full and fair opportunity to respond to misconduct allegations to ensure that there's a fair basis for its decisions. What's the, what is this, I was going to ask you about that, because you make that argument in your brief. What, what do you point to, what, what regulation or agency directive says that? As I understand it, your position is that had they proceeded against Mr. Waterman, they would have disclosed these four documents, right? That is correct. Okay, what, what do I look at in the record to find where that, where, where that, where the agency has been unclear? Yes, I think it's 1060, 31 CFR 1060, and then there is a second regulation if in the event that there was a, a disciplinary provision, I believe it's 10.71 through 74, which gives him a discovery right. But this, but the, but the rule says the proceeding will not be instituted under this section unless the proposed respondent previously has been advised in writing of the law, facts and conduct or in such action. Well, that's, that doesn't say previously by advice of the law and text doesn't say that you'll get these four documents, does it? Your Honor, the other, the other point that we're trying to make, however, is that the Office of Professional Responsibility after the 2018 district court ruling against Mr. Waterman issued an alert that says that Mr. Waterman brought this case, the SPOIA case, to challenge the denial of, quote, specific information regarding the allegations. That's referring to the three affidavits or declarations that the IRS submitted to this case. Well, that's, that's, wait, let's just look, you're talking about this alert, right? Yes. Okay. So I understood, tell me if this is wrong. I understood that to like in Waterman's case, if this alert had existed, he would have gotten earlier the same information he got in the September 10th letter. It doesn't say anything about whether he would have gotten these four, any underlying documents, just whatever was in the September 10th letter that told him the proceedings were closed, he would have gotten at an earlier stage. Am I reading it correctly? No, Your Honor, you're not. By the time this alert was issued, the attorney issued what's called the explanation, which is a fact-free sort of indictment of my client. But what, what the, what, what OPR is saying is the failure to allow him to get the factual basis of these allegations was, quote, inconsistent with its OPR's commitment to provide practitioners a full and fair opportunity to respond to the allegations. And let's just go back to the insight of Trombley and Iqbal. If you're trying to resolve a motion to dismiss on Rule 12B6 grounds, you can't possibly evaluate the allegations without the underlying factual, you know, the factual basis for them. And that is what OPR is saying. If not, OPR becomes a star chamber. It just relies solely on is that their ultimate decision ended on facts. And according to the Vaughn Index, the documents you want are documents that describe the facts that were necessary for them to make their opinion. Yes, Your Honor. But let's go back to the IRS's declarations. In this case, there is not a syllable in either the Rollins declaration or in the Vaughn Index that points to any specific harm under the deliberative process problem. The argument about... Do we require that? I believe you do. I thought our case law basically said that, you know, if it's facts, it has to be turned over. But if it's sort of curated facts by an employee who's putting together a case, then it's it's covered by the deliberative process. My point, Your Honor, is there's nothing in any of the affidavits or declarations that talks about harm under the deliberative process, let alone alludes to this chilling effect. And in this court just recently, and I'm going to mispronounce the name. Right, I can't pronounce it. But in the Machado Amadeus case, I believe, and pardon my, yes, but it was the same question in that case. And the court said, look, unless there's some substance to this, the agency loses. The agency bears the burden of providing the essential elements of the claim. And in Machado, the court said the affidavit, the agency affidavit explained in full why there would be chilling effect. There's nothing in the record that goes to that. And going back to the OPR bulletin or alert, here's our problem. We have been throwing down the gauntlet ever since this case started to say that Mr. Waterman is the only practitioner who's ever been deprived access to the factual allegations that underlie the conduct referral. It just, you know, to go back to it, you cannot assess bare bones allegations without some understanding. Why do you think those facts were put into a document? Oh, there's no question that Mr. Marchetti and Ms. Kelly thought that Mr. Waterman had engaged in misconduct. And, you know, I don't I don't doubt their good faith. I work in the government. You know, why do you think why do you think they wrote those documents? Why do you think they put those facts to persuade? I'm certain that they wrote those facts to persuade the Office of Professional Responsibility to initiate a disciplinary action. I mean, so then to quote quote Ancient Coin, which is self referring to May Potter very well, an exercise of judgment in extracting pertinent material from a vast number of documents for the benefit of an official called upon to take discretionary action. That's when they're protected. Yeah, but that's not the case here. For Ms. Kelly's declaration, there was no vast universe of facts. Her declaration dealt with a single telephone call between her and Mr. Waterman, and she made a contemporary report of that. What about the Marchetti? Marchetti, the one index says he compiled actions and statements by Mr. Waterman. That is what he did. And is it in the public record how many pages that compilation was? There is, I believe it was nine pages. And how many months or years did Marchetti interact with Mr. Waterman? That would be if you were listing all the facts of those interactions longer than nine pages. I'm sorry, listing all of them? Yes, yes, sir. Yes, that is true. If Marchetti were to list all of his interactions with Waterman, that document would be a lot longer than nine pages. Undoubtedly correct, Your Honor. That is true. But the question here is what what did he put down in the declaration? And Ms. Rollins says, what did he what did he put down? He put down the actions and statements of Mr. Well, no, actually, it says this is this. I wanted to follow up on this question with you. It actually says he recorded in his memorandum actions and statements that Marchetti believed made the referral appropriate. So he made the referral appropriate. So I've looked at the document. How do I? I know you haven't. But what what does a court do with a situation like this? OK, we've got the document in front of us. We've got the affidavit, which says that description of actions and statements, quote, that Marchetti believed made it appropriate. So how do we what do we do with that? I mean, I can look at it and let's assume to me that it looks comprehensive. But I have a sworn statement by the agency that it is that select. What do we do with it? Again, it's the agency's burden to prove an essential element of the exemption. And here there is nothing in any of the IRS filings that says that the release of these documents to allow Mr. Waterman to defend himself would cause some kind of chilling effect. And remember, in some ways, I think this argument is somewhat demeaning to the IRS. I don't think the IRS has a jurisdiction by regulation to report any suspicious misconduct. When I worked in the government, if someone, you know, suspicious conduct, they would have reported it and they would not have said, oh, gee, I don't want to report this because it might become public. What I really want to know from the IRS is what is there? There's real practice, because if you read the bullet, the alert, the way I do, what they're saying is the the failure of the of of the IRS to give access to Mr. Waterman about these these factual memos was not consistent with their practice. There is no manual about how OPR goes about its who has not been able to at least understand the factual basis for very. I mean, if you look at the explanation, these are very sharply worded allegations without any underlying factual predicate for them. I realize my time is is well over, but I'm happy to state any additional questions. Judge Rogers, anything else? No, thank you. Give you two minutes. OK, thank you very much. Thank you. It's. Good morning, your honors, may it please the courts, Julia Veda for the IRS. I want first to answer a question posed by Judge Tatel, which is whether Waterman under the new OPR letter writing procedure would have received the same information as he did under the previous. My opposing counsel has represented that the file would have been actively magically revealed and all claims of privilege would have dropped under the new procedure in OPR and nothing in the alert reveals that to be the case. There is no guarantee that a request made under the new procedure would result in any different outcome from a result made under the previous procedure, previous procedure. Wait, wait, can you just back up? So as I understand the alert, what you're telling me is that all it says is that Waterman would have gotten what he got in the letter earlier, correct? Possibly. What do you mean possibly? There may be other 6103 protections that aren't triggered in a FOIA request that may have been applicable at that time. There has since been a waiver of a number of 6103. You mean possibly he would have gotten more than he got or possibly he would have gotten less than. He would not have, in either event, he would not have received anything that the IRS would hold back under the deliberative process privilege, a separate question from any changes in what might have been disclosed under 6103. OK, but setting aside the alert, Mr. Had. OPR, instead of closing the case, proceeded against his door, he would have had access to these documents, he would have had access, your honor, to the factual allegations made against him, not the documents, not necessarily in the form made in these documents. What we don't know. Is whether the ultimate allegations, excuse me, the letter, the letters, is he asked the agency for these documents before he filed his FOIA? The agency said, well, we can't give them to you because the proceedings are now closed, correct? Correct. And they cited a statute for that. 6103. Doesn't that suggest that if the proceedings are no longer closed, that is if they're proceeding against him, he could have the documents? He could have received so that that goes to the change in procedure. The previous procedure in OPR advised a practitioner who had been referred to OPR that claims had been made against you, but we have decided not to proceed against you and we have closed your file. The provision of 6103 cited by OPR when it declined to share his file with him was the provision that protected closed files from disclosure. That provision, which we cite in our brief, only permits the disclosure of files in an active proceeding to assist in a practitioner's defense. So when they close the file. That's his whole point. His whole point that had OPR proceeded against Waterman instead of closing, have had access to these documents. No, he would have had access to what he eventually received under his FOIA. As it were, as it was under the previous. What, what is there, can you cite a, is there an IRS regulation that governs what people are entitled to, who OPR proceeds against? Well, Circular 230 prescribes the procedure of when a complaint is filed against a, a practitioner before the IRS and the discovery rights that they have during an OPR proceedings. Right. And what does that say about these? What does that say that would help? Well, it, it, it allows you to, it certainly allows you to access the factual substance of the allegations made against you. That's actually going to be apparent in the. Well, how can someone defend against the factual allegation unless they see the underlying analysis of the agency that supports that? Well, your honor, you are, you have no doubt witnessed many a discovery dispute where parties alleged that the pre-decisional deliberative documents that led to those allegations were protected by the same privilege. And that will arise even in a Circular 230 procedure. Can you cite a case for that? Um, I, I offhand, no, I can't name a discovery dispute, but my point is this. The, the availability of, um, discovery and, uh, and evidentiary procedures in Circular 230 has its own governing structure. It's not quite the federal rules of evidence, but in the past, people complained about Circular 230 being more, I think my colleague called it a star chamber. It is not like that now there are rules and, and, and you can't access the facts against you. However, what you cannot access, which you cannot access in under the new OPR procedure, making requests for your file before they close it is the same information that is protected in a FOIA request, which is the pre-decisional deliberative process. For example, if these line level employees decided to refer Mr. Waterman for misconduct for, let's say three different incidences of wrongdoing and OPR chose to proceed only with one, the allegations that were not advanced in the complaint would not, would be withheld on relevance grounds as well, but certainly as pre-decisional and deliberate. And that's where the, the, the concern comes in with the chilling effect. Of course, employees have a duty to do their jobs, but they also have the protection of not having their thought processes laid open for public scrutiny, particularly in cases where no further action is taken based on their recommendations. Oh, and we may be talking past each other. You're particularly sentenced the phrase that you added on. I get that. Okay. I get that. But the point is that these documents would have been available and OPR proceeded against, and therefore, I believe they would have been protected by a claim of privilege, which would have been, I guess, been subject to litigation. Okay. I, I, it's okay. I would like you after oral argument to cite for us the best authority you have. Okay. If that's okay, we'd like the best authority on the proposition. That's yeah. On the proposition that, that this, that the deliberative process privilege or some form of it would operate to deny Waterman access to these documents, even if OPR had proceeded against them. Okay. So let me ask you a different question. Okay. So the Rollins declaration says, the Rollins declaration says, I cited this to Mr. Facts that he thought believed may be referral appropriate, right? Yes. Okay. I've looked at the Marchetti. I mean, it's, I mean, we know it's, I think the declaration says it's nine pages. To me, it looks like a chronology. So what do I do as a judge reviewing this? I have an agency declaration that says it's selected, but I look at the document. It doesn't look selective at all. It looks like to me, exactly the kind of document that the chronology that was in this case called men, men, other, whatever the cases, you know, the, the Kurt Waldheim case looks just like that. I think that the, the presentation of information in chronological order does not imply that there was a lack of deliberation in the selection of that information. And as your honor yourself noted earlier, this was information that Mr. Marchetti selected out of the universe of his dealings with the universe of Waterman's dealings. But why would it be such a broad? Wouldn't it just be the universe of the case against which he's charged? Well, and that, and that there in lies the rub, because what he's doing is he's creating a persuasive. His selection of the facts is based on his belief. Look, if, if I hadn't looked at the document, I would say, okay, I get it. We have a sworn declaration, but like the district court, I went and looked at it. So, and I'm asking, what do I do when, and it's the agency's burden here. You, the agency has the burden of, of defending the application of the deliberations. So if I have, if I have a sentence in a declaration that says, that says, these are facts that he called believed made it appropriate. But I look at the document and it doesn't look that wouldn't I say, well, I don't think the agency satisfied his burden of proof. It hasn't explained to me. Sure. The sentence it's in the declaration says, says, uh, uh, the Marchetti believe made the referral appropriate. That's conclusory. Now that I've seen the affidavit, he doesn't say in what respect, what's he left out, what kinds of decisions did he make? And when it's, it's the agency's burden, aren't I entitled to ask that question? And this is, this is where we have the benefit of the, uh, the district judges in camera review. Well, I reviewed it too. And we're DeNova. Yes. But the, but, but what, what, so what, excuse me, but, uh, because he says he did not uphold the IRS's indication of exemption five and the deliberative process privilege because of the nature of the factual material contained within the records, but instead because of how those documents were prepared and for what purpose, as your honors have observed. The district court had the same thing. I did. The district court is basically describing the Rawlins declaration. And I'm, what I'm trying to get some help on is what I'm saying to you is that this is one of the judges who's looking at this case, I'm worried about your burden of proof. And, and what's your best answer to my concern here where I have an affidavit that includes the reform says it's selected. When I look at the document, it doesn't look that way. What do I do? That's my question. I'm not arguing with you about it. I'm asking you for your thoughts about how a reviewing court is supposed to think about it. Well, we have to, we have to look to the purpose of the document and we have to look to what Mr. Marchetti told Ms. Rawlins when she made her, her declaration, which was, yes, I put that together because I was building a case because I was advocating and we can, we can be, this is, this is a distinct, a different type of list-making from a sort of broad net patch all investigation where you are listing all of the making relevance determinations. He's going a step beyond that. This isn't merely everything that's relevant. This is what he thinks are his best facts. Yeah, but all right. So when I said to you that I looked at the document and it just was a chronological list, your response was, well, chronology can be an important way to present the facts, but in the Waldheim case, I'm calling it that because I can't pronounce the name of the case, but you know which one I mean. Yes. We said it was a, it was a quote, inventory presented in chronological order, containing a comprehensive collection of the essential fact. A comprehensive collection of the essential fact. That's right, Your Honor. And this is different from a comprehensive collection of everything that Waterman did. The Waldheim chronology was a comprehensive collection of everything that Waldheim did during his military service, and that was why the court released it after an in-camera review had so determined. Here, our in-camera review has made a different determination, which is that this involved thought. This involved an attempt to persuade. This involved beliefs that these were the best facts to build a case that this practitioner had committed misconduct before the IRS. It's not comprehensive and it's not exhaustive. There are many, many instances of non-misconduct that are not on that list. But how do I know that? I mean, I've looked at the document. Shouldn't we say to the agency, well, let's go on. Well, you and I've talked about this for a while. Let's take a look at the, at the, let's talk about the Kelly memo. The Rollins declaration says about that, that it says sets forth part of the facts that made it appropriate. Right? So I've read the Kelly memo. Looks to me like a straightforward summary of a telephone call. I mean, how do I know what she didn't put in there? What, how do I know from looking at that, that she was selective since Rollins didn't tell me. She just stated conclusively that she didn't conclusively, but that's what she did. But she doesn't tell me how. What you know, she didn't put in there is information, not necessary to build the case against Waterman because that's the purpose for which she wrote that memo. How do I know that? I leave that you don't know it from the Rollins declaration. That's my whole point about the burden of proof. Well, that's exactly my point. Does it, but that must have declaration state, like define the universe of facts from which a piece of advocacy is drawn in order for that piece of advocacy to be deliberative. Exactly why I'm asking you the question. I don't know the answer to that. It's a, I'm asking you for some guidance. I don't think it's tricky because in most FOIA cases, we don't go look at the record, but here they were so short. I went and got them and read them. So now I face this dilemma. It's not, it's not simply the record of, for example, the investigation of Mr. Waterman's potential wrongdoing, because there was no such investigation. The investigation was referred and OPR said, we're not proceeding with this. Yeah, there would be a record of an investigation had there been one. These pre-decisional deliberative documents are how you would get to that investigation. And that's the goal of those documents. And that's why they were prepared. There will not be in any declaration at this phase in the proceeding, a contextualization of those allegations within the universe of a practitioner's good conduct. And it wouldn't make sense for 30. It wouldn't make sense for Rollins or for Marchetti or Kelly in briefing out the facts that they believe support a referral for misconduct to list off all of the many, many years of Waterman's practice and all of their voluminous interactions with him during which he committed no misconduct. That's not how that part of their case for misconduct. Kelly and Marchetti had an opinion about what OPR should do, correct? They did. What was their opinion? Their opinion was that OPR should investigate Mr. Waterman for potential misconduct. That opinion was their point of view, correct? It was indeed. And did these two memos from Marchetti and Kelly reflect that point of view? That is our position. And that is, and if they did reflect that point of view, they're protected under the Waldheim case because the chronology in that case did not reflect a point of view. Well, the chronology reflects no point of view. So let me try a version of Judge Taylor's question. I'm not gonna speak for him. I think you have a good chance of winning if these documents, Marchetti memo and the Kelly memo reflect Marchetti and Kelly's point of view about what OPR should do. How do we know that they reflect Marchetti and Kelly's point of view? We know from the Rollins declaration, she has confirmed with both Marchetti and Kelly that they wrote these memoranda specifically with the intent of making an OPR referral and having selected the facts to support that referral. We know the purpose for which those documents were prepared. And can we also infer that purpose absent the declaration just by looking at the documents? We do not suggest that that is necessary on these facts. We're just looking at the Vaughn index and the declarations. We are not urging an in-camera review of the documents to make a holding. I understand that. But if if I have reviewed them in-camera, I want you to say anything that's not public. What is your best argument for how I can infer from nine page, one page, engage in an enforcement action? As noted, this came during an extensive interaction between Waterman and the IRS. There were not multiple instances of there were not multiple potential referrals. There was one instance where Marchetti and Kelly said, hmm, something's going on here. And they put their hands together. The rest of the time, as you noted, as you noted before, years and years and years of documents going back and forth, interactions between the agency and the practitioner. Those were not documented here with the purpose of creating a referral or supporting a referral to OPR. And that's key because you are winnowing this universe of facts down to the facts that you portray the occasion that gave rise to its compilation precisely. And you think it would be inaccurate to say no known datum in the selected category had been omitted. Thank you. That's all right. I'm I have my answer, but I just hate what you have more. Yeah, I do. I want to. If you want to continue pursuing, I'm going to change the subject. Please do. So I know this is a FOIA case and it's not about the legitimacy of the September 10 letter. I have to ask you, which seems to me to be deeply unfair. This letter says to Waterman, we're not going to charge you, but the information, we're going to retain it in our files because it might be used against you later if you get in any more trouble. You're welcome to respond, it says, but that won't affect we won't consider it at this point. And then it says you should modify your behavior accordingly. I mean, explain to me why the IRS thinks that's fair to someone. You're basically saying we're not charging you, but we're keeping all of the evidence we have against you on file. It could be used against you later. And by the way, I don't have the language right in front of me. You should you should you should you should adjust your behavior accordingly. You know, you look in a federal agency, tell some. My first response, your honor, is that you've identified the reason why they needed to change the procedure. Well, this doesn't change the procedure under the under the new procedure will be exactly the same. The only difference, as I understand that under the new procedure, is that Waterman earlier before they closed, it would have been told essentially what was in the September 10 letter. It doesn't change this at all. Right. Would have received. OK, so so here's a new procedure. The old procedure, they would issue that letter, says you're talking about the September 10 letter, the September. Do I have the wrong date? The September 10th is the Marchetti memo. They only got one letter. What's the date of the letter? I'm sorry. It's what's the what's the date of the letter? That was September 10th. So the Marchetti memo and the letter are precisely a year. Yes. I'm not talking about those. I'm only talking about the letter that that Waterman got. Yes. Do I misread that letter? No, you know, we're not charging you, but you better better adjust your behavior. I mean, you did receive that. I mean, that's like saying that's like saying someone's charged with indicted for robbing a bank and they drop the charges against them. But they say, OK, we're dropping the charges. We're keeping all the evidence. If you get in trouble again, we're going to use it against you. But don't rob any more banks. I mean, how does that conform with even the simplest concept of due process? I think evidence of past wrongdoing is is frequently relevant in subsequent proceedings, and the agency is under no obligation to destroy its records just because an investigation is on pursuit. However, it is so say is me in the letter. Yes, that's what they said. You're welcome to file something and respond, but we won't consider it. And that's the change. What's now? That letter does not promptly close the file. That letter is issued when a practitioner is notified that a referral was made. But an investigation, I see if I understand the change correctly. Sounds like a slight improvement, but not enough of improvement to alleviate one, the kinds of concerns that that Judge Tatel is airing that I share. In the old regime, they would say someone like Mr. Waterman, there's an allegation against you. Period. In the new regime, they'll say there's an allegation against you and. We will tell you what that allegation is, but even in the new regime, although we will tell you what the allegation is, we will not tell you the facts that support that allegation. Am I correct that that's the new regime? The new regime, so both the old and the new regime do come with a summary of the allegation, so it's not a total mystery, but the factual basis for the is not revealed absent an inquiry, you're not going to be presented with them in the in your first communication with OPR. Right. What OPR provides you now is the opportunity to request those and to request as much of your file as is unprivileged and can be disclosed to you. And once you receive that and you will you will then have a sense of what is being what is being referred. Would Waterman get anything more under the new procedure than he got in the September 10 letter? He would receive what he got in response to his FOIA request at a minimum. I must say, isn't that also a maximum? But you said so, but what I would not receive based on this record is what other privileges might be implicated in the new in the new regime, he would not receive anything more than he currently today has. I believe that's correct. But he would receive it on first request and he would not have his first request rebuffed because his file was closed and then need to file a second FOIA request. So here's what is under the go ahead. So you go ahead. I didn't mean to interrupt. No, no, no, no, no. Please continue. I was just going to ask you, I'm looking at the alert. OK. OK, OPR now sends a letter to the practitioner advising him. Of the issues presented of the issues presented. That's all it says, and then it says, when appropriate, it sends a second letter with the soft letter. It sounds to me like you can explain this to me, but the way I understand this, Waterman, once they decided to investigate him, he would get what he got in the September 10 letter. And sure, he could ask for more information. The agency would probably deny it, but all he would get is what's in the September 10. And then, then so that's that's my understanding. Number one, my understanding, number two, is that even under the new alert, if the agency decides not to proceed against a lawyer, that lawyer will get exactly what the September 10 letter was. I don't believe. In other words, in other words, we're going to keep it or they won't be told any longer. That'll be kept on file. They and they won't be told any longer that they can respond, but we won't consider it and they won't be told any longer that they should that they should adjust their behavior accordingly. We don't know from this alert how the text of the letter has changed. And we do know that there is now an opportunity to request the file and receive it without making a separate FOIA request. That's the material distinction here. If you receive this letter, it advises you of the issues presented in the matter under investigation, gives the practitioner an opportunity to comment. You can now add to your file and you can say these allegations have been made against me. Here are my potential defenses to this. And I believe the, for example, in this case, the misconduct, potential misconduct of which Marchetti suspected Waterman involved unreasonable delay. An unreasonable delay is an allegation that is not a mystery to someone who has been a part of this process and knows how long it's taken. And he can offer defenses and add information to his file in response. And this new process creates an opportunity for him to do exactly that so he can respond and say, please provide me with what you've got on these allegations. Yes, I want to see my file. He gets the file, which resembles precisely the FOIA disclosure. And he is able to comment and only thereafter do they close his case. It says this two letter process gives a practitioner who wants to know more about the an opportunity to make a request before the OPR closes the matter, thus fitting within the framework of the 6103 provision. It waives no privilege. It doesn't change the contours of the file other than to remove this one block to disclosure under Section 6103 that the previous letter imposed. Elizabeth, I know that Judge Rogers has attempted a question. Judge Rogers. Yes, thank you, Judge Walker. My only concern here is initially I understood the IRS piggybacking on sort of criminal procedures, but it's become clearer and clearer that that's not what's happening here, that this is something quite different. And I understand that I originally thought, well, he knows the essential allegations, like, you know, it's alleged that undue delay. Well, in what respect, with regard to what, with regard to what element of the case? I mean, he's been practicing for years. Just think of how he could respond, and he may have wonderful reasons for those delays, but they may be irrelevant to what the agency was considering. So I guess the question still in my mind is, I understand you push back and you say, well, now you get two letters. I thought, yeah, but if you don't know what it is and you've been practicing there for years and apparently no complaint has been filed before, so how is he supposed to change his procedures? All right. He's supposed to never violate a rule on the agency about your opposition is due within 30 days or something like that. It's just not clear. And so I guess what we're concerned about is, so far as I know, if a practitioner's sole practice is in this particular area and he's trying to clear his record and he gets this statement from the agency, so presumably in any future matter he's involved in, somebody in the agency has got to note that record, even though there are no charges. But I just think this is entirely different from a criminal procedure where you're not arguing that you have to be able to determine beyond a reasonable doubt that he's much less that the prosecutor has to make representations, that it has the evidence that could be its burden of proof. So I just think this is so different. And the agency has a right to set up its rules. But if it's going to have some sort of broad new approach that anyone who files more than 30 days late is subject to a potential complaint, then it's quite a different agency procedure. And that's what's unsettling about this matter. And we're trying, I think our questions have just been trying to give you the best opportunity to assure us that, you know, this is not a situation where somebody has a gripe against the attorney. He may have had bad relations with some client. There may be an explanation as to why he was unable to respond. But, you know, what does he do? File sort of a case history of all of his proceedings over decades. That's what's troubling. What's the most immediate response to that, Your Honor, is that the information he's received here is that he is not being investigated. The claim against him is not being investigated. But this can be used against him in the future. And in the meantime, he ought to change procedures. That's all. And that wording is unfortunate, but it does not place him at a disadvantage in a subsequent proceeding where those allegations against him will be fleshed out in detail if they are relied on by the agency. Well, he risks having another complaint filed against him. And as I understand it, part of his concern is his reputation before the agency. He comes to the agency with sort of an asterisk by his name. In any event, thank you, counsel, for your efforts to assure us that the agency understands unfairness and its new procedures will. Well, let me just follow up on our concerns and I just want to follow up on Judge Roger's question. So is this September 10 letter public? It is it on the agency's website? I would not be surprised if it were, but I can't answer that to a certainty. We see why I ask. I mean, suppose suppose suppose I'm a client looking for counsel before the IRS and I know that against him. No, no, no. I don't believe that that decisions not to proceed with investigations are published based on the individual's letter, maybe something that I obtained it through FOIA. I do not know, I could not state right here that it might not be subject to some withholding privilege. I do know that the reputational harm as as as he is threatened with by an investigation that was never pursued against him is effectively of his own making since he has publicized the documents through this case. Well, that's why I ask whether the documents that's why I ask whether they're available on FOIA. I mean, if I were a corporation looking for counsel in this case, I might say to the IRS, I want to see I want to see I don't know what you call these letters, but I want to see these letters. And if I saw a letter, if I was thinking of hiring Mr. Waterman and I saw a letter that said, you know, allegations were made against you, but that and it said that he's been told to, quote, modify his future conduct accordingly based on allegations he's never seen at the agency as I'm pursuing. On the record before this court, I regret that language on behalf of the agency. The letter itself does not put him in any legal jeopardy. He has not been accused. He has not been subject to an investigation and no complaint has been filed against him. I know you say it's unfortunate, but it's a fact of life in his case. Yes, your honor, the agency's in the letter and now the burden is on him to do something. OK, thank you, counsel. Before you before you go is that if you could within the next three days and the court would be grateful if Mr. Votic could do the same. Let us know of the rules and regulations that govern what. Mr. Waterman would have received from the IRS. If the OPR had proceeded against. Against. Mr. Vlado. No doubt my time is expired. You can. You can respond to Judge Walker. Our opening brief does go through the various steps that would have been would have been taken had there been a disciplinary hearing. And I think the answer to your question is in our opening brief, but we will certainly provide that if we want a sneak preview of what will be filed in three days, where in your opening brief, what would be fine? I was just searching for it. That's okay. Yeah, we'll get we'll find out in three days. I have a lot to cover and I realize we'll give you you can have more than the minute and a half that's left. I think that closing counsel, we gave 25 minutes. Thanks. I just want to quote from the other side's brief in response to a question. Judge Tatum asked, and it says this on page 40 of the brief quote, had the office of professional responsibility chosen to take action against Waterman, he would have been apprised of the facts and the allegations against him. So, there's no question that if there had been a disciplinary proceeding, he would have gotten the facts that were, you know, that were laid out in the Marquette and the telememorandum. Let me, let me also try to explain why I think the bulletin is more important than perhaps the IRS has suggested. What the bulletin says, and this is on J175 at the end of the second paragraph, that Mr. Waterman went to the went to court with a FOIA request to, but there, the IRS continued to deny specific allegations, sufficient, excuse me, sufficient, specific information regarding the allegations. Now, that is plainly a reference to the allegations that are contained in the Marquette, tele, and Brown memorandum. And the OPR then goes on and says that the district court's ruling, quote, is inconsistent with his commitment to provide practitioners a full and fair opportunity to respond to allegations. Now, again, I don't know, and I cannot represent that Mr. Waterman is the only one who has faced this kind of allegation of misconduct without having access to the factual record, but there is, you know, again, likely harm is an essential element of the IRS's case. They have to claim privilege and show privilege. And once again, I just want to underscore there is absolutely nothing in the declarations that goes to this chilling harm argument. And in fact, it doesn't really make sense because here, Mr. Mr. Marquette and Ms. Kelly filed this referral for one reason alone, which was to ensure that there was an investigation and a discipline hearing for Mr. Mr. Waterman. So, so that Mr. Mr. Votic seems to resolve the FOIA question against you, which, you know, we've been talking for the last minute or so about whether what the IRS did with its letter to Mr. Waterman was fair or outrageous, but the inquiry into FOIA, and I can't remember the exact phrasing that you just used, but the inquiry into FOIA for deliberative process seems to be worth were the facts in the document. Compiled and curated for the purpose of advising the agency of what to do, and that seems to be what you just said. The purpose of advising. Yes. Any referral advises the OPR to invest if I had my clerk who who should win this case. And I said, just just, you know, just do a document. I just I just want to know the and he's and he said, you should win. And I said, well, just do do a memo for me that says all the facts that support what Mr. Waterman winning that would be a and I said, put him in chronological order. That would be a chronology of facts, but it would be with the purpose of advising me how to make a decision. That seems to be textbook and having argued your question to me was, you know, we're channeling judge Buckley, who was presiding and he asked the same question. But once again, let's go back to map. First of all, the government ultimately released the entire report. Why didn't release the entire report? Because the chronology section, which it said should be released. Was the road map to all of all times and to see if that means that well, no, maybe that means that may pot. There's ultimate decision was in conflict with itself. No, no, your honor, because the chronology set. The chronology section, this court order. I know. I mean, maybe that part of the court's decision was in conflict with the other part of the court's decision. What they said should not be disclosed. I don't think so. Your honor. I mean, what the court said is there's no valence to this. These are just facts. These are just facts that are assembled by people like Miss Kelly and Mr. Marquette course said that in the chronology, of course, said no fact was left out. That is clearly not the case here because if no fact had been left out of Mr. McKinney's interactions with Mr. Waterman that document would not have been nine pages. It would have been 109 pages. Well, that is true. Your honor. That is that is a difference, but I have not looked at the records, but to the extent there's a chronology of what Miss Kelly and Miss Marquette think was wrong. Why isn't that? Just like the chronology section in in map, which was required to be because because in this case, it reflects a point of view. May Potter said the chronology reflected no point of view in this case. A datum has been omitted in May in May Potter. The chronology was a chronology where no known datum in the selected categories had been omitted. In this case, the chronology betrays the occasion that gave rise to the compilation in May. Potter, the chronology in no way betrayed the occasion that gave rise to the compilation. Just put again, the IRS is brief rather and now I'm on page 33. Rather, the facts were carefully selected with one purpose in mind to support allegations that that Waterman had violated certain provisions of section 230. There is nothing in these declarations that say anything about showing effect. There's just there's nothing there at all. The only reference to the deliberative process privilege is in Miss Herring's declaration, where he thinks she thinks that maybe this is a word. But maybe maybe that's the test we should we should apply. We should just ask ourselves whether it would have chilling effect. Of course, I mean, that is one of the main purposes behind the privilege. But of the three differences I drew between the chronology and the Waldheim report and the what what what is publicly known about Marchetti and Kelly memos, do you disagree with any of those three differences? You are maybe a better way of phrasing. Do you agree that these memos are different than the chronology in the Waldheim report in at least those three ways? I don't think so, Your Honor, and let me just take a step back. The point of the chronology was to lay out what where Waldheim was during the during during the Second World War. And from that chronology, any reasonable historian could have deduced everything else in the report. That is why the government ultimately decided to release the entire report. And here, what you have is a selective, you know, you have a selective release. You have the explanation that releases all the allegations. It's my client in a very poor light. Everyone in the IRS knows about this. And once the, once the, you know, once the alert was published, everybody else could figure this out. Right? So there's no hiding from this for my client. But it is for that reason. Let me just go through these three. You tell me if you disagree. That is for that. It is for that reason that the memos in this case reflect a point of view. Correct? They reflect. Yes, they're seeing two memos in this case, betray the occasion that gave rise to their compilation. Yes, but again, the last one, the memos in this case omit at least some known datum. There are nine pages rather than 109 pages. Correct? That is correct. But there's one factor missing, which is they wanted these, these facts made public. They wanted a process to go forward. They assumed that Mr. Waterman would ultimately see these facts, because if there was any kind of disciplinary proceeding, he would be, the IRS would be obligated to give it to him. So the idea that they're, you know, they're going to be chilled seems to me, you know, they wanted, they wanted a disciplinary proceeding, and they were well aware of the fact that if they succeeded, there was no way that they would not end up furnishing these, you know, these memos to Mr. Waterman. You done? Yeah, I've, I have two, two questions. One is, what's your, how would you answer the questions I was asking IRS counsel about what a court does when we have a situation like this, or at least I think we have, where we have a declaration that says, essentially, these memos are selective, the authors pick the facts that they thought supported their case. That's what she says. Yet, when we've looked at the document, it looks like the current Waldo document. So what do we do? What is it a burden of proof issue or is there's what? How would we what would I say in an opinion? If we were going to say, yeah, I understand the declaration say they're selected, but I've looked at the document and they don't look. So what they don't look deliberately well, this is I mean, this court reviews the district court decision to know. Yes. Correct. Right? So the fact that the district court may have seen this in a different way. No, I'm not asking about the district court. I'm asking the declaration, the agency's declaration. Forget that. Don't forget that. I'm not talking about the declaration is like any other piece of evidence. It has to be valued in and judged. And oftentimes judges don't don't agree with the assertions that are made. So what should they have? I get that's a good point. What should they have put in this? What should Rawlins have put in this declaration to convince us that this was, in fact, selected? Well, I think what should she have said? One thing. There's nothing in the in the in the declarations that really speaks to harm under the. I understand that. But setting that aside, what what what what should they have said in addition to the Marchetti's selected the facts that he thought supported the case? What should they have said? Oh, and I think she would have had to add something, which she didn't. And there is a concern that if these documents become public, there will be a chilling effect. And the next time Mr. Marchetti thinks that a practitioner is engaging in in misconduct, he will not comply with the IRS's requirement that you report. I'm sorry. Let me try once again. I understand your point about that. They haven't shown that it would chill. But I'm asking you a different question, which is, what should what should Rawlins have said in it to convince us that this document, which I've looked at, is, in fact, selective? Should she have said what? What should she have said? How could she have convinced me that even though I'm looking at what looks like a chronology? It's not sorry. I don't have a good answer. All right. Here's my other question. I'm still completely confused about the alert. I'm sorry that I just don't understand it. It says. Here's what it says. It says it says. It says. Okay, OPR now sends a letter to a practitioner advising him. Of the issues presented, all it says is of the issues presented and gives him an opportunity to ask for more documents. In other words, that looks like the September 10 letter. Minus you get more documents. So that's why I asked both of you whether under the new rule, what he would have gotten under the new rule, he would have gotten more documents. He would have gotten this statement of issues earlier. And then he could have asked for more documents. And that's the issue before us today. Now, of course, today it's before us under FOIA, but then it would have been before it would have been before the IRS under its own regulations. That's why I said all it seems to me it does is move up the date that he gets a statement of the issue. I think that wrong. I think that is. I just read it. So I agree with your interpretation of the procedures, but what I think is equally salient is that the IRS found, excuse me, the OPR found the decision below inconsistent with with its commitment to provide practitioners a full and fair opportunity to respond to the allegations. Everybody knew the allegations had been provided to Mr. Waterman at that point in time. The question really is what else should have been provided in order to allow the process to continue? Look, part of the concern is fairness, right? We've been talking about fairness. How can a process be fair? If you can't understand what the underlying factual, what do we do if we think parts of the process were profoundly? But the application of the FOIA statute was legally. I guess you write an opinion in which I lose and you sort of operate the IRS, which is not what I would urge you to do. Your honor. I think I think the better way to do it is saying there's something fundamentally wrong with this case. All the allegations have been released. They're very unkind to my client. He has no way to really defend himself. You all, I'm sure at one point or another had to decide whether a complaint. You know, plan a cause of action, but the inside of probably an equal is. You know, you need to understand the factual basis for allegations in order to decide whether a case can go forward or not. And so I don't want to try your patience. Judge Rogers. Do you have any additional questions? No, thank you. I wouldn't do what I would urge this court to resolve this case one way or another. This is the 6th anniversary of this case literally is filed on September 12th. And thank you so much. Thank you. Mr. Blatt.
judges: Walker, Rogers, Tatel